IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUSTIN D.,[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-01529-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Justin D. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record.

///

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in May 1982, making him forty-one years old on August 31, 2023, his amended alleged disability onset date.[2] (Tr. 16, 18, 116, 263, 266.) Plaintiff has completed some college coursework and past relevant work experience in a composite role as a forklift operator and stock clerk. (*Id.* at 26, 53, 330.) In his DIB application, Plaintiff alleges disability due to posttraumatic stress disorder ("PTSD"), depressive disorder, anxiety, insomnia, degenerative joint disease, respiratory issues, and back, left hip, knee and neck conditions. (*Id.* at 116, 126, 329.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on August 6, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a telephonic hearing held before an ALJ on May 16, 2025. (*Id.* at 37-59.) Later that month, on May 28, 2025, the ALJ issued a decision denying Plaintiff's application. (*Id.* at 15-28.) The Appeals Council denied Plaintiff's request for review on June 25, 2025, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

///

[2] "[T]o be eligible for DIB, a claimant must prove continuous disability that began on or before the date last insured[.]" *Hasji v. Kijakazi*, No. 21-15319, 2023 WL 6458648, at *1 (9th Cir. Oct. 4, 2023) (first citing 42 U.S.C. § 423(a)(1)(A), (c)(1); then citing 20 C.F.R. § 404.131; and then citing *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1459 (9th Cir. 1995)); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam) ("[O]nly disabilities existing before that time can trigger [a claimant's entitlement to disability] insurance benefits.") (citation omitted). Thus, to be eligible for DIB, Plaintiff must prove that he suffered from a continuous disability that began on or before his date last insured of December 31, 2027. (Tr. 16, 116.)

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

///

## III. THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-28.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 31, 2023, his amended alleged disability onset date. (*Id.* at 18.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: PTSD, anxiety disorder, depressive disorder, attention-deficit hyperactivity disorder, fibromyalgia, trochanteric pain syndrome, and lumber degenerative disc disease with radiculopathy. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that met or equaled a listed impairment. (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to these limitations: (1) Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs but he can never climb ladders, ropes, or scaffolds, (2) Plaintiff can "understand, remember, and carryout simple instructions and perform tasks that do not involve a specific production rate, such as assembly line work or an hourly production quota," (3) Plaintiff can tolerate "occasional changes in a routine work setting," and (4) Plaintiff can engage in "occasional contact with coworkers and the general public." (*Id.* at 20.) At step four, the ALJ determined that Plaintiff was unable to perform his past composite role as a forklift operator and stock clerk. (*Id.* at 26.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as an electrical "sub assembler," electrical "accessories assembler," and marker. (*Id.* at 27.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in three ways. (Pl.'s Opening Br. at 2-3, ECF No. 12; Def.'s Br. at 2, ECF No. 14.) First, Plaintiff argues that the ALJ failed to provide

clear and convincing reasons for discounting his symptom testimony. (Pl.'s Opening Br. at 2.) Second, Plaintiff argues that the ALJ failed to provide germane reasons for rejecting the lay witness testimony of his mother, Linda P. (*Id.* at 3.) Third, Plaintiff argues that the ALJ failed to provide a sufficient explanation for discounting the opinions of the state agency psychological consultants, Benjamin Kessler, Psy.D. ("Dr. Kessler"), and Winifred Ju, Ph.D. ("Dr. Ju"). (*Id.* at 2.)

The Court finds that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. The Court therefore affirms the Commissioner's decision.

## I. PLAINTIFF'S SYMPTOM TESTIMONY

### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

### B. Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the

symptoms alleged. (*See* Tr. 21, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

**1. Preliminary Considerations**

"[T]he 'clear and convincing' standard requires an ALJ to show his work[.]" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quoting *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021)). That "assure[s a] reviewing court that [the ALJ] did not arbitrarily discredit [the claimant's] testimony." *Cope v. Bisignano*, No. 25-2337, 2026 WL 1134289, at *1 (9th Cir. Apr. 27, 2026) (simplified). Satisfying this standard turns on "whether the ALJ's rationale is clear enough that it has the power to convince," not on "whether [the] court is convinced[.]" *Smartt*, 53 F.4th at 499.

In evaluating the sufficiency of the ALJ's rationale, a court may not "'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Id.* at 500 (first quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); and then citing *Thomas*, 278 F.3d at 959); *see also Treichler*, 775 F.3d at 1098 ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (simplified). A court must instead ask whether the ALJ's rationale for discounting the claimant's testimony is supported by "substantial evidence in the record as a whole"; that is, "more than a mere scintilla" of evidence, which is "not [a] high" evidentiary threshold and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)); *cf. Chen v. Bisignano*, No. 25-3588, 2026 WL 1427028, at *1-2 (9th Cir. May 21, 2026) ("Substantial evidence requires 'more than a mere scintilla' of evidence but does not require more than 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion' when considering the entire record. . . . The ample record evidence relied on by the ALJ is 'more than a mere scintilla' of evidence to support his decision to discount [the claimant's] subjective symptom testimony." (quoting *Biestek*, 587 U.S. at 103)).

Applying these principles below, the Court finds that substantial evidence supports the ALJ's discounting of Plaintiff's testimony. Before turning to the clear and convincing reasons that the ALJ provided, it is important to consider that the ALJ "did not fully discount" Plaintiff's testimony and instead formulated an RFC that accounted for Plaintiff's mental and physical impairments. *See Morrow v. Bisignano*, No. 24-3711, 2025 WL 1924900, at *2 (9th Cir. July 14, 2025) ("Notably, the ALJ recognized that [the claimant] does have limitations in his ability to stand, walk, and sit, which the ALJ incorporated into his [RFC] . . . . But the ALJ ultimately determined that . . . greater limitations were inconsistent with the foregoing examination findings in [his] medical records. That rationale is clear enough that it has the power to convince[.]") (simplified).

Specifically, the ALJ explained that although she declined fully to credit Plaintiff's testimony, she considered his "symptoms and impairments when assessing [his] functional limitation." (Tr. 23.) The ALJ, for example, relied in part on Plaintiff's "complaints of difficulty standing, walking, lifting, and performing postural activities" in formulating an RFC that limited him to "light work with occasional climbing of ramps and stairs, no climbing [of] ladders, ropes, or scaffolds, and occasional stooping." (*Id.*) Similarly, the ALJ relied in part on Plaintiff's "reported side effects of medication" and "subjective reports of difficulty with mental functioning" in finding that he can "deal with occasional changes in a routine work setting" and

"understand, remember, and carryout simple instructions and perform tasks that do not involve a specific production rate, such as assembly line work or an hourly production quota[.]" (*Id.* at 24.)

The Court's analysis below demonstrates that the ALJ satisfied the clear and convincing reasons standard. Like other courts, however, the Court finds it notable that the ALJ did not fully discount Plaintiff's testimony. *See Burns v. Bisignano*, No. 24-4199, 2025 WL 1937448, at *2 (9th Cir. July 15, 2025) ("Notably, the ALJ did not fully discount [the claimant's] testimony and accounted for her physical and mental limitations in the RFC determination.") (simplified); *Austin v. Dudek*, No. 23-3602, 2025 WL 957499, at *2 (9th Cir. Mar. 31, 2025) ("In addition, the ALJ considered [the claimant's] alleged impairments, incorporating several 'precautionary' measures in the [RFC] determination . . . , even where there was limited or conflicting evidence.").

**2. Reported Activities**

To the extent the ALJ declined fully to credit Plaintiff's symptom testimony, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for doing so.

It is well settled that an ALJ may discount a claimant's symptom testimony based on an inconsistency between his claimed limitations and reported activities. In *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014), the Ninth Circuit noted that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *see also Garrison*, 759 F.3d at 1016 (stating that if a claimant's "level of activity" is "inconsistent with [his] claimed limitations," an ALJ may discount the claimant's testimony based on his reported "activities") (simplified); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse

credibility determination." (first citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); and then citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004))).

In this case, the ALJ discounted Plaintiff's symptom testimony because he reported engaging in activities that were incompatible with his claimed limitations—in particular, his testimony that his "irritability" and "difficulty with reliability" prevented him from sustaining gainful employment. (Tr. 23-24.) During the second administrative hearing, Plaintiff addressed these issues, testifying that he last worked at Costco as a cashier, forklift operator, and floor merchandiser. (*Id.* at 39-41.) Plaintiff explained that his job at Costco ended after seventeen years because he "went out on a leave for PTSD," "kept on calling out," continued to use paid and unpaid leave, decided to "just quit" after finding out that Costco was "going to let [him] go," and "tried to get hired back at Costco to see if they would take [him], and they said they wouldn't because . . . [he] wasn't reliable." (*Id.* at 40-42.) Plaintiff further explained that at times, he was "irritable" and "ang[ered] easily" when customers at Costco were "being jerks" or "being really rude," he would "just walk away" to avoid "get[ting] in a confrontation with them," and he would "get in trouble at work" because the customers would complain that he was not "being helpful" or providing them with "good customer service." (*Id.* at 50-51.)

The ALJ found Plaintiff's "reported irritability" and "reported difficulty with reliability" inconsistent with his ability to "live[] alone except when taking care of [his] two young children four days a week," drive his children to "activities and sports," take his children on a vacation to Disneyland, and "assist with coaching a children's baseball team during the period at issue." (*Id.* at 23, first citing Ex. B3F at 79; then citing Ex. B3F at 84; and then referencing Tr. 39-52; *see also id.* at 19, contrasting some of these activities with Plaintiff's "reported difficulty being around others"). The ALJ added that because Plaintiff could engage in these activities, she

declined to formulate an RFC that limited his interactions with supervisors. (*Id.* at 24, citing Ex. B3F at 84 and Ex. B15F at 15; *see also id.* at 50-51, addressing Plaintiff "ang[er] over stupid stuff . . . when [he] was at work" and focusing on Plaintiff's interactions with and response to customers; *id.* at 350, Plaintiff "usually" has "[n]o problem" getting "along with authority figures"; *id.* at 342, Plaintiff "get[s] along well with authority figures as long as they are respectful").

Plaintiff acknowledges that the ALJ found his testimony inconsistent with his reported activities, including living alone except for the "four days a week" when cares for his young children, attending his children's "after-school or sports activities," assisting the coach of his youngest child's baseball team, and taking his children to Disneyland. (*See* Pl.'s Opening Br. at 10-11; *cf.* Tr. 39-52.) Plaintiff, however, argues that the ALJ's findings "fail to demonstrate a greater functional capacity than alleged." (Pl.'s Opening Br. at 11.) Plaintiff also argues that "'[t]he mere fact that [he] cares for small children does not constitute an adequately specific conflict with [his] reported limitations,' and the record lacks specific details about [his] other reported activities to constitute substantial evidence inconsistent with his alleged limitations." (*Id.*, first quoting *Trevizo*, 871 F.3d at 682; and then citing *Trevizo*, 871 F.3d at 676.) The Court disagrees.

The Ninth Circuit's decision in *Trevizo* is distinguishable. In that case, the 65-year-old claimant had not worked in nine years and lived with her husband, 18-year-old grandson who helped her with housework, and two young, adopted children. 871 F.3d at 668, 673. The Ninth Circuit held that the ALJ erred in discounting a physician's opinion and the claimant's testimony on the ground that they conflicted with the claimant's childcare activities. *Id.* at 676, 682. Emphasizing that the "mere fact that [a claimant] cares for small children does not [on its face]

constitute an adequately specific conflict with her reported limitations," the Ninth Circuit explained that there was "almost no information in the record about [the claimant's] childcare activities," let alone "details as to what [the claimant's] regular childcare activities involved." *Id.* The Ninth Circuit also explained that the "only childcare responsibilities identified at the hearing were one-off events, such as taking the children to the doctor or attending hearings (often by phone)" and the claimant's childcare responsibilities "appear[ed] to . . . permit her to rest, take naps, and shower repeatedly throughout the day, all of which would be impossible at a traditional full-time job." *Id.* The Ninth Circuit further explained that the ALJ failed to "develop a record regarding the extent to which and the frequency with which [the claimant] picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations" and failed to "inquire into whether [she] cared for the children alone or with the [help] of her grandchildren or other family members." *Id.* at 676.

Unlike the ALJ in *Trevizo*, the ALJ here focused on specific activities and aspects of Plaintiff's testimony and appropriately found that Plaintiff lived alone and spent four days a week caring for two young children on his own. (*See* Tr. 19-21, 23-26, highlighting Plaintiff's activities and ability to care for his children on his own because he "lives alone, except for . . . [the] four days a week" when his children are present; *id.* at 26, noting that Plaintiff's mother reported that he cared for his children "on his own"; *see also id.* at 338, 346, reflecting that Plaintiff and Plaintiff's mother confirmed that he cares for his young children on his own). The ALJ also appropriately developed a record regarding Plaintiff's engagement in activities that were relevant to his ability to be around others, irritability, and lack of reliability. (*See id.* at 39-52, reflecting that Plaintiff stated that it was "very stressful" being around "large groups" and "crowds of people" at Disneyland, he missed practices because he felt depressed and did not

"want to see anybody," and he did his "best and focus on [his] kids" at Disneyland, and identifying no other instances in which Plaintiff's irritability and lack of reliability prevented him assisting the coach, serving as a sole caregiver, or getting his children to or from any of their activities).

Further, and contrary to Plaintiff's argument, the ALJ identified a direct conflict between Plaintiff's activities and claimed lack of reliability and inability to be around and tolerate his interactions with others. *See Prasad v. Bisignano*, No. 25-2727, 2026 WL 2241792, at *1 (9th Cir. Aug. 4, 2026) (holding that the "ALJ gave 'clear and convincing reasons,' supported by substantial evidence, to discount [the claimant's] symptom testimony" and noting that the "ALJ identified a direct conflict between [the claimant's] testimony that he could not walk two blocks and his report that he walked a mile each day and felt 'fresh' afterward" (quoting *Smartt*, 53 F.4th at 499)). To the extent Plaintiff disagrees, he "simply offer[s] an alternative interpretation of the record[, which] does not demonstrate the ALJ committed reversible error." *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *1 (9th Cir. Nov. 7, 2024) (first citing *Smartt*, 53 F.4th at 494; and then citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)).

In sum, the Court declines to "second-guess" the ALJ's "reasonable determination based on specific, clear, and convincing evidence that [Plaintiff's reported] activities were inconsistent with the alleged severity of [his] limitations." *Smartt*, 53 F.4th at 499-500 (quoting *Rollins*, 261 F.3d at 857).

### 3. Evidence of Effective Treatment

The ALJ also discounted Plaintiff's symptom testimony based on his reports of improvement and effective treatment. (*See* Tr. 22-23, citing Ex. B2F at 1, 3, Ex. B6F at 16, Ex. B8F at 6-7, Ex. B9F at 6-7, Ex. B14F at 6, Ex. B16F at 1, 6, Ex. B17F at 7, 9, 12-13, and

Ex. B18F at 1, i.e., Tr. 512, 514, 899, 1042-43, 1061-62, 1641, 1670, 1675, 1683, 1685, 1688-89, and 1695.)

"[E]vidence of medical treatment successfully relieving [a claimant's] symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with [treatment] are not disabling for the purpose of determining eligibility for [disability] benefits.") (simplified). For example, in *Eli v. Bisignano*, No. 25-10, 2026 WL 2455137, at *1 (9th Cir. Aug. 21, 2026), the Ninth Circuit held that the ALJ provided "sufficiently 'specific, clear and convincing reasons'" for discounting the claimant's testimony "concerning the frequency and severity of his migraine headaches." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). In so holding, the Ninth Circuit noted, among other things, that the ALJ "considered that [the claimant] had experienced significant improvement from treatment, including an experience of '[six] weeks headache free' and a self-report of 'getting good relief with a greater than [fifty percent] reduction in headache frequency, intensity and duration.'" *Id.* (citing *Warre*, 439 F.3d at 1006).

The ALJ considered comparable record evidence here. For example, the ALJ considered Plaintiff's visit to Crater Lake Surgery Center on March 24, 2025. (Tr. 22-24, 26, citing Ex. B18F at 1, i.e., Tr. 1695, five times in assessing Plaintiff's testimony and the medical opinion evidence). During this visit, Plaintiff's physician, George Johnston, D.O. ("Dr. Johnston"), performed a "repeat lumbar radiofrequency facet joint neurotomy procedure as treatment for his chronic left-side axial low back pain." (*Id.* at 1695.) Dr. Johnston noted that Plaintiff exhibited tenderness bilaterally in his lower lumbar paraspinal muscles and full strength throughout his

bilateral lower extremities and that Plaintiff's "[p]revious lumbar facet joint neurotomy procedure on the left side provided him significant relief of his pain for almost [twelve] months." (*Id.*)

The ALJ also considered Plaintiff's visit to Pain Specialists of Southern Oregon on February 18, 2025. (*Id.* at 22-24, 26, citing Ex. B17F at 9, 12-13, i.e., Tr. 1685, 1688-89.) During this visit, Plaintiff's nurse practitioner, Jaclyn Thornton ("Nurse Thornton"), reported that he underwent a radiofrequency ablation procedure on January 6, 2025, and achieved an eighty percent reduction in his pain, which was "still holding" over a month later. (*Id.* at 1685, 1688.) Nurse Thornton also noted that Plaintiff "appear[ed] to be obtaining adequate relief and improvement in [his] ability to function" and underwent a radiofrequency facet joint neurotomy procedure on February 28, 2024, which resulted in an eighty percent "[i]mprovement in [his] pain and improved ability to perform daily activities involving his work for [almost twelve] months." (*Id.* at 1688-89.) Furthermore, Nurse Thornton observed that Plaintiff's "medication regimen provide[d] improved quality of life and functional gain" and Plaintiff estimated that his pain medication resulted in a sixty percent improvement in his pain and "level of functioning." (*Id.*)

Plaintiff recognizes that the ALJ discounted his testimony because he experienced "some improvement from treatment." (Pl.'s Opening Br. at 10, citing Tr. 22-23.) Failing adequately to address the examples of significant improvement upon which the ALJ relied, Plaintiff argues that the ALJ committed reversible error because it is "unclear how partial relief with persistent waxing and waning symptoms undermines [his] testimony regarding his capacity [to work]." (*Id.*)

///

Plaintiff's arguments fall short of demonstrating that the ALJ committed harmful error. The ALJ cited examples supporting a finding that because Plaintiff experienced significant improvement from treatment, his limitations were not as severe as he claimed. The ALJ's rationale comports with Ninth Circuit authority. *See, e.g.*, *Seidl v Bisignano*, No. 25-3681, 2026 WL 2169047, at *1 (9th Cir. July 28, 2026) (rejecting the claimant's argument that the ALJ improperly relied on her reports that certain treatment methods "improved her symptoms" and explaining that "an ALJ may discount a claimant's testimony because of effective treatment" (citing *Warre*, 439 F.3d at 1006)); *Floe v. O'Malley*, No. 23-35589, 2024 WL 4601594, at *1 (9th Cir. Oct. 29, 2024) (holding that the ALJ "properly noted that [the claimant's] symptoms improved with medication and treatment, concluding that such evidence undermined [the claimant's] statements about the severity of his impairments" (citing *Wellington*, 878 F.3d at 876)); *see also Eli*, 2026 WL 2455137, at *1 (holding that the ALJ appropriately "considered that [the claimant] had experienced significant improvement from treatment, including an experience of '[six] weeks headache free' and a self-report of 'getting good relief with a greater than [fifty percent] reduction in headache frequency, intensity and duration'" (citing *Warre*, 439 F.3d at 1006)).

In short, because the ALJ's rationale is clear enough that it has the power to convince, she did not err in discounting Plaintiff's testimony on the ground that he improved with treatment. *See Smartt*, 53 F.4th at 500 (explaining that an ALJ must "show his work" under the clear and convincing reasons standard and the relevant question is not "whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince") (simplified).

///

**4. Conflicting Medical Evidence**

The ALJ also discounted Plaintiff's testimony based on conflicting medical evidence. (Tr. 21-24.)

Under Ninth Circuit precedent, an ALJ may discount a claimant's symptom testimony based on conflicting medical evidence. In *Smartt*, for example, the Ninth Circuit held that the ALJ "properly discounted" the claimant's "subjective pain testimony and self-reported limitations," in part because the "objective medical evidence was inconsistent with those limitations." 53 F.4th at 496-97. The Ninth Circuit explained that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* at 499 (quoting *Carmickle*, 533 F.3d at 1161).

Similarly, an ALJ does not err in discounting a claimant's testimony based in part on "generally . . . normal mental status examinations," even if he can "point[] to other mental status examinations that tend to corroborate [his] testimony." *Jarrett*, 2024 WL 4707890, at *1 (making a nearly identical finding and holding that the claimant failed to "demonstrate the ALJ committed reversible error" (first citing *Smartt*, 53 F.4th at 494; and then citing *Carmickle*, 533 F.3d at 1164)).

In this case, the parties dispute whether the ALJ appropriately discounted Plaintiff's testimony based on conflicting medical evidence. (*See* Pl.'s Opening Br. at 9-10 & Def.'s Br. a 4-6, 8, addressing objective medical evidence that conflicted with Plaintiff's self-reported limitations). The Court finds it unnecessary to resolve the parties' dispute regarding the objective medical evidence because Plaintiff's reported activities and improvement with treatment are sufficiently clear and convincing reasons supporting the ALJ's partial discounting of his testimony.

///

**5. Conclusion**

In summary, the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. *See Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *2 (9th Cir. Nov. 12, 2025) ("Because the ALJ's rationale is clear enough that it has the power to convince, the ALJ's citation of [conflicting] medical records and daily activities provided sufficiently specific, clear, and convincing reasons for discounting her subjective testimony[.]") (simplified); *see also Burke v. Bisignano*, No. 24-5863, 2025 WL 3764054, at *1 (9th Cir. Dec. 30, 2025) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that "an ALJ may not discount a claimant's subjective symptom testimony by relying solely on the absence of corroborating objective medical evidence" (citing *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024)).

## II. LAY WITNESS TESTIMONY

Plaintiff next argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by his mother, Linda P. (Pl.'s Opening Br. at 11-13.)

Plaintiff's argument that the ALJ erred in evaluating Linda P.'s lay witness testimony is derivative of his challenge to the ALJ's partial discounting of his own testimony. (*See id.* at 12, noting that the ALJ discounted Linda P.'s testimony on the same grounds that she discounted Plaintiff's testimony and thus arguing the ALJ's "reasoning must fail" for the "reasons addressed above"; *see also* Tr. 26, finding that Linda P.'s lay witness testimony "generally mirror[ed]" Plaintiff's self-reports and conflicted with the "record for the same reason[s as his] subjective reports"). Given that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony, the ALJ appropriately discounted Linda P.'s testimony on the same grounds. *See Olson v. Bisignano*, No. 25-434, 2026 WL 1724734, at *1 (9th Cir. June 15, 2026) ("[B]ecause the ALJ offered clear and convincing reasons for rejecting [the claimant's] testimony, those same

reasons are necessarily germane to her friend's statements, which mirrored [the claimant's] subjective complaints." (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009))); *Yandrich v. Bisignano*, No. 25-4027, 2026 WL 2322819, at *1 (9th Cir. Aug. 11, 2026) ("The ALJ gave specific, clear, and convincing reasons for discounting [the claimant's] symptom testimony[.] . . . Because those reasons were valid, and because the lay testimony from [the third party] largely repeated [the claimant's] claims, the same reasons are germane grounds for discounting her testimony." (first citing *Smartt*, 53 F.4th at 499; and then citing *Valentine*, 574 F.3d at 694)).

Accordingly, the Court finds that the ALJ did not err in discounting Linda P.'s lay witness testimony.

## III. MEDICAL OPINION EVIDENCE

### A. Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[3] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v.*

---

[3] Given that Plaintiff filed his application for benefits on November 30, 2023 (Tr. 15), the parties agree that the revised regulations apply here. (*See* Pl.'s Opening Br. at 3-6; Def.'s Br. at 11-14.)

*Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). "Only if the ALJ finds two or more contradictory medical opinions both equally well-supported and consistent with the record must the ALJ then articulate how he or she considered these other factors." *Id.* at 1214 (simplified) (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

**B. Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's explanation for discounting Drs. Kessler and Ju's opinions. (Pl.'s Opening Br. at 3-6, citing Tr. 24.)

**1. Dr. Kessler and Ju's Opinions**

Drs. Kessler and Ju, both state agency psychological consultants, reviewed Plaintiff's medical records and completed Psychiatric Review Technique ("PRT") forms and Mental Residual Functional Capacity Assessments ("MRFCA") on April 24 and August 1, 2024. (*See* Tr. 118-23, 130-34.) As relevant for purposes of this appeal, Drs. Kessler and Ju agreed that Plaintiff suffered from social interaction limitations and thus can engage "only [in] occasional appropriate interaction with supervisors, co-workers and the general public" because of either "periods of irritability," i.e., symptoms of his medically determinable impairments. (*Id.* at 122, 133.)

///

**2. The ALJ's Decision**

The ALJ found Drs. Kessler and Ju's opinions "only partly persuasive." (*Id.* at 24.) In support of this finding, the ALJ explained that although Drs. Kessler and Ju's opinions were "supported by explanation," she found them "inconsistent with the record as a whole." (*Id.*) In particular, the ALJ declined to adopt Drs. Kessler and Ju's opinions that Plaintiff is limited in his ability to interact with supervisors because his reported activities demonstrated that he could engage appropriately with supervisors. (*See id.* at 24-25, declining to formulate an RFC that placed any "limits on . . . interacting with supervisors . . . due to [Plaintiff's] testimony on activities").

The ALJ highlighted Plaintiff's reports of driving, shopping, attending his children's "sports and events," taking his children to Disneyland, and serving as an assistant coach on his child's baseball team. (*Id.* at 25, citing Ex. B3F at 84 and Ex. B15F at 15.) The ALJ added that "despite reports of irritability," Plaintiff's providers consistently described him as "cooperative" on examination. (*Id.*, citing Ex. B3F at 85, Ex. B4F at 10, Ex. B6F at 5, and Ex. B7F at 2, 21, 24.)

**3. Disposition**

Substantial evidence supports the ALJ's partial discounting of Drs. Kessler and Ju's opinions.

Notably, Plaintiff does not challenge the ALJ's partial discounting of Drs. Kessler and Ju's opinions to the extent that the ALJ relied on his providers' observations that he consistently presented as "cooperative" on examination. (*See* Pl.'s Opening Br. at 3-6.) Instead, drawing again on the Ninth Circuit's decision in *Trevizo*, *cf. supra* Part I.B.2, Plaintiff argues that the ALJ erred in relying on his reported activities because (1) the ALJ failed to provide a sufficiently clear explanation as to why any of his reported activities undermines Drs. Kessler and Ju's opinions

that he can engage only in occasional appropriate interactions with supervisors, and (2) the record lacks specific details as to what these activities involved. (*Id.* at 4-6, citing *Trevizo*, 871 F.3d at 676.)

Consistent with its reasoning in Part I.B.2, the Court concludes that Plaintiff fails to demonstrate that the ALJ committed reversible error. *See generally Jarrett*, 2024 WL 4707890, at *1 ("[The claimant] offers a different interpretation of the medical records . . . [b]ut simply offering an alternative interpretation of the record does not demonstrate the ALJ committed reversible error." (first citing *Smartt*, 53 F.4th at 494; and then citing *Carmickle*, 533 F.3d at 1164)).

Plaintiff identifies his role as an assistant youth baseball coach as the "most relevant activity" that the ALJ cited but emphasizes that he merely "helped out when the coach asked," "'herd[ed]' the kids as needed," "focus[ed] on the kids" if he felt "irritated," and did not hold an "official position." (Pl.'s Opening Br. at 5, quoting Tr. 48.) Plaintiff maintains that the "record otherwise lacks any specific details," such as "how long or how often [he] helped his child's team" or the "nature of frequency of interaction between [him] and the team['s head] coach," "support[ing] the ALJ's conclusion that this [role] undermines" Drs. Kessler and Ju's opinions that he is "able to maintain only occasional interaction with supervisors in a vocational setting." (*Id.*)

Contrary to Plaintiff's argument, there are additional details supporting the ALJ's reasonable interpretation of the record. For example, during the second administrative hearing, Plaintiff identified "just not . . . be[ing] irritated" as the only potential "difficulty" that he encountered as an assistant coach. (Tr. 48.) Plaintiff, however, suggested that he was able to overcome such difficulties by "kind of focus[ing] on the kids" who were "little" and only

needing to do "whatever the[ coach] told [him] to do," which often meant running the players through "drills that the coach told [him] to do." (*Id.*) These details support the ALJ's rejection of Drs. Kessler and Ju's opinions that Plaintiff is limited in his ability to interact appropriately with superiors.

Plaintiff's testimony about these details aligns with other record evidence, including testimony that he and his mother provided.[4] In her third-party adult function report, Plaintiff's mother, Linda P., stated that Plaintiff "usually" has "[n]o problem" getting "along with authority figures" like "police, bosses, landlords or teachers" and that he has never "been fired or laid off from a job because of problems getting along with other people." (*Id.* at 351.) Similarly, in his adult function report, Plaintiff explained that he has never "been fired or laid off from a job because of problems getting along with other people" and he "get[s] along well with authority figures" (i.e., "police, bosses, landlords or teachers") "as long as they are respectful." (*Id.* at 342.)

Furthermore, Plaintiff did not attribute his departure from Costco to any difficulty with supervisors, as opposed to customers who caused him to "walk away" because they were being "rude" or "jerks" and later complained that he was not "helpful or [provid]ing good customer service." (*Id.* at 39-42, 46-47, 50-51; *see also id.* at 66-72, noting that "Roseburg Costco" was not "really too much" of a problem but a different warehouse was problematic because Plaintiff would "get a thought out" of his mind by "tap[ping his] head," which caused "people [to] look at

[4] Such evidence provides additional support for a ground upon which the ALJ relied in discounting Drs. Kessler and Ju's opinions. *See Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) (noting that courts are "not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely" but are "permitted to consider additional support for a ground on which the ALJ relied" (citing *Warre*, 439 F.3d at 1005 n.3)).

[him] like . . . what's wrong with this guy," and an employee would call others to "help the front end" by ringing a "bell," which "stress[ed]" him out because it "sound[ed] just like incoming code").

Given these facts and Plaintiff's failure to challenge the ALJ's reliance on his providers' observations regarding his consistently cooperative presentation, the Court concludes that substantial evidence supports the ALJ's partial discounting of Drs. Kessler and Ju's opinions and formulation of an RFC imposing no limits on interactions with supervisors. *See Ahearn*, 988 F.3d at 1115 ("[W]hatever the meaning of 'substantial' [outside of the social security] context[], the threshold for such evidentiary sufficiency is not high." (quoting *Biestek*, 587 U.S. at 103)); *see also Thomas v. Bisignano*, No. 24-5005, 2025 WL 2452375, at *1 (9th Cir. Aug. 26, 2025) (noting that the claimant "dispute[d] the characterization of his activities, [but] an ALJ's different rational interpretation is not error" (citing *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005))).

**CONCLUSION**

For the reasons stated, Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 31st day of August, 2026.

Stacie F. Beckerman

HON. STACIE F. BECKERMAN
United States Magistrate Judge